IN The United States District Court

For the Northern District of Georgia

Lola G Barron

    Plaintiff, *pro se*                Case No:1:22-CV-4219

v.

Sergij Novack, Ed Bastian, Delta Airlines et al,3rd party employer Sedgwick,3rd party vendors Marriott International INC. And Hilton Worldwide Holdings INC.

    Defendant(s).

---

### Plaintiffs Amended Complaint

Plaintiff Lola G Barron ("Plaintiff"), states as follows her Amended Complaint

against Defendants Delta Airlines et al, Sedgwick INC., Marriott International INC.,

and the Hilton Worldwide Holdings INC.("Defendants").

**<u>The Parties</u>**

1. Plaintiff, Lola Barron is a citizen and resident of the state of Georgia.

2. Plaintiff was employed as a Flight Attendant by Delta Airlines for 10.5

   years until the actions of all Defendants detailed below, resulted in

   termination of Plaintiffs employment.

3. Plaintiff worked for Defendant Delta Airlines in the Atlanta Flight

   Attendant Base.

4. Delta Airlines is Incorporated in the State of Georgia

5.  Defendant Marriott, is a Delaware corporation. At all relevant times, Marriott regularly and continuously is doing and transacting business throughout the state of GA.

6.  Defendant Hilton, is a Virginia corporation. At all relevant times, Marriott regularly and continuously was doing and transacting business throughout the state of GA. Sedgwick is incorporated in Memphis, Tennessee and regularly and continuously was doing and transacting business throughout the state of Georgia.

7.  Plaintiff Barron, in this complaint brings Counts under Title VII Civil Rights Act of 1964, race discrimination and retaliation under the Americans with Disabilities Act (ADA for failure to accommodate her disability leading to her termination from her job.

## Common Statement of Facts

8.  Plaintiff worked as a flight attendant Delta Airlines for approximately 10.5 years prior to an incident on October 16,2017 that is the catalyst of all discrimination, harassment and retaliation that followed.

9.  The incident being, the Plaintiff was kicked off of an aircraft by a white captain after a false allegation of threatening behavior towards and made by a white, younger (under age of 40) co-worker.

10. The alleged unprofessional behavior of the plaintiff supposedly took place on October 16,2017 in the lobby of the Marriott's Cleveland Hopkins Sheraton Airport Hotel.

11. The "unprofessional "behavior amounted to a minor disagreement with Plaintiffs fellow crew member and accuser. A discussion where Plaintiff inquired about another crew member (accusers' friend) who was absent for departure from the hotel because he unfortunately was upstairs oversleeping.

12. Plaintiff was told that the capt. wanted a "happy "crew,

13. Plaintiffs 2 crew members were white and a 3rd an unknown nationality.

14. Plaintiffs 3 crew members were 6.5 months employees and friends from the same training class.

15. Plaintiff urged Defendant Delta to obtain video footage from the hotel.

16. Plaintiff was confident that the footage would confirm that there was no profanity, no menacing gestures, there was a 2 seat sofa between her and her accuser and it would no threatening body language.

17. On October 16,2017 when Plaintiff offered her audio recordings, recorded as a safety measure, Plaintiff was ordered to delete the supporting video without being viewed. Plaintiff did not delete the recordings.

18. After the removal by a white pilot who never spoke to or met the Plaintiff, and without an investigation 4.5 months later on January 31,2018 Plaintiff was placed on an 18-month probation.

19. Plaintiff was falsely told that the capt. did not have to provide a report or a statement. Which was not Deltas protocal

20. Plaintiff was told that the Corrective Action (probation) was a result of a statement supposedly provided by the Sheraton Front Desk Clerk matched up with the other crew members.

21. Plaintiff's probation letter stated that Plaintiff's behavior could jeopardize the relationship with the Sheraton Hotel.

22. Plaintiff attempting to exonerate herself from the false allegation because she was severally harmed by the conditions included with the 18-month probation.

23. Plaintiff was targeted because she spoke up on the fact the there was a pattern of Delta allowing white pilots to remove African American flight attendants from aircrafts. Please see Cynthia Ward v Delta Airlines, flight attendant left in Africa and Gina Henderson v Delta Airlines.

24. In February 2018 Plaintiff desperate to be exonerated of the false depiction and the 18-month probation removed, the Plaintiff called the

Marriott Corporations Corporate Care department to ask if as the
employee not paying for the hotel stay was she entitled to any
information.

25. Plaintiff was told that she was entitled to a copy of any incident report
that *should* have been generated.

26. A Marriott representative called the Hotel on Plaintiffs behalf and
provided her with the name and contact information for the Airline Crew
Liaison who also was an HR Leader.

27. Plaintiff spoke with the Hotel Liaison and at first she was told that there
was no record of an incident and that she did not see where a request had
been made to get a statement from any employee.

28. The hotel Liaison then put Plaintiff on a 15-minute hold and came back
and stated that she did have an incident report but she would not be
providing or discussing it. Phone call can be proven.

29. Plaintiff spoke with another Hotel representative from Corporate
Customer Care, and was advised to put the request in writing and send to
the hotel directly and file a complaint with the Marriott Corporate Care.
This was done by the Plaintiff.

30. The response from the hotel was to tell the Plaintiff to get a subpoena.

31. February 2018, not an hour after receiving the response from the

    Sheraton Hotel representative. Plaintiff received a menacing call from a

    male Base Director Fred Jones stating "I am going to say something to you

    and you're going to comply. Knock it off! The Sheraton does not want

    anything to do with this."

32. Important to note that the Plaintiff reported to Defendant Deltas HR

    department the bullying tactics of Base Director Fred Jones on 2 or more

    occasions.

33. On April 17,2018 Plaintiff attended a meeting to get a copy of the revised

    (Plaintiff requested revision) probation letter and Plaintiff was told to

    expect an update on the hotels.

34. Plaintiff was told by Fred Jones who was now acting as the head bully,

    that the Sheraton had contacted Delta Airlines and wanted to "ban"

    Plaintiff from returning.

35. Plaintiff was told that the request for the ban was because she had asked

    for the incident file and any existing video.

36. Plaintiff attempted to file a claim of discrimination, harassment and

    retaliation in 2018 with the Atlanta office of the EEOC and was dissuaded

when the intake representative told Plaintiff that it was highly unlikely

that his manager would accept her claim stating "Not enough has

happened to you yet".

37. Plaintiffs continued for the next 13 months because Plaintiff spoke up on

the racial and age bias of the captain that led to *only* her in a 2 person

disagreement being kicked off of the aircraft in front of 100 plus

passengers and the subsequent probation.

Plaintiff continued working under a cloud of the probation and in a hostile

work environment with other incidents occurring.

38. In November 2018, a false complaint was submitted by the Hilton

Doubletree Hotel in Lima Peru.

39. The original complaint was never shown/produced and what the Plaintiff

was showed was an undated, unsigned complaint that had changed from

when she was first informed of it on the phone, December 7,2018 35 days

after it supposedly was written and submitted to Delta Airlines

supposedly on November 2,2018.

40. Because Plaintiff was working without incident with her crew members

and with passengers Defendant Delta relied on a pattern of getting

complaints from contracted hotels.

41. On February 11 2019, Plaintiff filed a complaint with the EEOC for continued discrimination, harassment and retaliation.

42. On February 13,2019 Plaintiff met with her then manager Christi Jackson and she was told that the Hilton complaint was being closed out because of lack of merit.

43. On February 14,2019 3 days after filing the EEOC complaint unbeknownst to Plaintiff her EEOC complaint was closed although she had been told that she would be contacted to provide her supporting documentation.

44. February 2019, Plaintiff had an emotional anguished fueled by fear conversation with Defendant Sedgewick representative Melia Evans. Plaintiff was emotional because from talking to a Department of Labor representative she knew that Defendant Sedgwick's handling of her FMLA absence on February 25,2019 and January 8th was improper as she suspected.

45. Before speaking with the Sedgwick rep her mother (88) at the time was tearful and apologized for causing Plaintiff problems at work.

46. On March 8,2019 Plaintiff attended a meeting where she was put on a NEW 24-month probation citing the closed complaint from the Hilton, unreliability citing an appealed FMLA absence that was later corrected by

the DOL and a pending FMLA absence that Sedgwick held off for 19 days

approving, which was not their contract with Delta Airlines.

47. In this meeting on March 8,2019 Plaintiff was blindsided and was

informed that her conversation with the Sedgwick representative about

her mothers health and doctors appointment was being put in her 24-

month probation.

48. Defendant Delta had not given Plaintiff the opportunity to discuss or

defend her emotional outburst.

49. Defendant Delta had padded the probation letter with the Hilton

complaint although it had been closed out 25 days earlier.

50. Plaintiff knew that she was being retaliated against and still am till this

day for filing a claim with the EEOC not a full 30 days prior.

51. On March 9,2019, Plaintiff flew her last flight as a Delta Airlines flight

attendant.

52. Plaintiff started a 6 month medically approved leave of absence and

transitioned into a long-term leave of absence which was exhausted on

Sep 7,2021.

53. Plaintiff took the leave because of not being able to endure the hostile work environment that was carefully being crafted by Delta Airlines with the help of above listed defendants.

54. Plaintiff was diagnosed with PTSD, depression and anxiety disorder.

55. Plaintiff filed a claim with the Atlanta Office of the EEOC on Sept 3,2019. The claim was closed out on August 4,2020 absent an interview, absent witness interviews and without the EEOC interviewing or requesting the request for the ban from the Sheraton hotel, and the complaints from the Hilton Doubletree Hotel or the Marriott's Sheraton Hotel.

56. It was not until February 3,2020 when Plaintiff finally received the 4 month delayed position statement from Delta Airlines, Plaintiff learned of the existence of a complaint that was sent in by the Marriott supposedly in February 2018.

57. Delta Airlines used these complaints in Plaintiffs Corrective Actions (probations) and then Plaintiffs suspension and termination.

58. The Hotel complaints and the request to ban Plaintiff from the premises played a key role in Plaintiffs disciplinary actions but they were not included as supporting documents in Deltas position statement.

59. The alleged Marriott complaint along with the Hilton Complaint was never requested by the EEOC and as a result remains till today unsubstantiated.

60. Plaintiff had correspondence with Defendant Marriott s Corporate Liasion JoLynn Wheeler on January 21,2021 and although informed of the professional harm that she was facing because of false reports and the "ban" the Marriott representative declined to discuss or assist.

61. Plaintiff's concern was treated differently than that of a Marriott's regular guest.

62. In June 2020 the General Manager of the Sheraton, Annie Martin told the Plaintiff that she could not address her concern because of their (the hotels) relationship with Delta Airlines. This conversation can be proven.

63. Plaintiff informed the Defendant Marriott of how Defendant Novak had used them with her termination and the Marriott will not confirm the request for the ban (Marriott) nor will they definitively confirm the existence of the complaints and what precipitated them being sent in.

### Count 1-DISCRIMINTATION and Retaliation Based ON RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

64. Plaintiff incorporates paragraphs 1-63.

65. Plaintiff, an African-American female, was discriminated against by Defendant Delta Airlines by being subjected to a hostile work

environment, culminating in multiple false accusations that the Plaintiff

could not adequately defend because although included in disciplinary

actions (18 and 24 month probations)there was no time-stamped

evidence of the original unedited Defendant Hiltons complaint and

Defendants Marriott's complaints was not disclosed until Feb 2020 (never

provided) and the request to ban her from the premises was never

produced by Plaintiffs employer or the Defendants Marriott and Hilton

66. Plaintiff was painted as an unprofessional and a concern in a 2-party

disagreement with a fellow white crew member who faced no

repercussions.

67. A Hilton Representative Quitta Johnson with Executive Customer

Relations informed Plaintiff that Delta had falsely told them that the

Plaintiff was no longer employed with Delta.

68. Hilton Representative Johnson stated that the Hilton stood by what the

Lima Hotel Clerk had provided to Delta Airlines. This conversation can be

proven.

69. In email correspondence the Hilton Executive Customer Relations

representative Mia Gordy confirmed that Defendant Delta Airlines had an

agreement to where Delta required reports regarding crew behavior.

70. Despite informing the Hilton Executive Customer Relations representative in written correspondence that I would like to address that a false complaint had been provided to my employer and that I saw any reports provided as a potential invasion of privacy the Hilton Executive Customer Relations representative told me that they would not assist and intervene. Not standard protocol for guest relations.

71. The Hilton had a Hotel representative from the Lima Peru hotel call me and he confirmed that Delta had an agreement to provide reports on crew members and while he apologized for my harm (on tape) he per the Executive team was instructed to refer me to Delta about the report.

72. These never supplied complaints caused substantial harm to Plaintiffs reputation, her work records her psyche and ultimately her livelihood. WHEREFORE: Plaintiff respectfully requests that this honorable Court enter judgment in favor of Plaintiff on her Discrimination and Retaliation Claim, and award Plaintiff all damages in excess of $75000 to which she is entitled, including but not limited to damages for lost wages, future wages, severe emotional distress that she has suffered and will continue to suffer, and punitive damages as well as any future attorney fees and cost.

## COUNT II-VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

73. Plaintiff incorporates paragraphs 1-72

74. Plaintiff suffers from disabilities under the ADA: post -traumatic stress disorder (PTSD), stress, depression and anxiety.

75. Pursuant to the Americans with Disabilities Act, Plaintiff submitted a request from her physician for an accommodation for her anxiety and PTSD so she could return to the career that she had for 27 plus years and her flight attendant job with Delta Airlines for 10.5 years.

76. With 90-95 percent of the hotels for crewmembers being either Defendants Marriott or Defendants Hilton Hotel properties, properties that wanted to ban her and had sent in false reports of unprofessional behavior, the thought of lodging at a hotel in the role of a Delta employee in an unprotected work group became a trigger for Plaintiff.

77. Plaintiff was fearful because she had been informed by the Hilton representative that Delta had an agreement to get reports on "crew behavior". How many hotels did Delta have this agreement with?

78. Plaintiff had expressed her concern to the Hilton representative and Delta hotel representative Tracy Coram that the wrong hotel desk clerk with their own biases or someone seeking to solidify their good relations with Delta could provide false reports.

79. This accommodation was simply that the Plaintiff for a minimum of 6 months be allowed to work from home with 20-hour work week and with a discussion of selecting one manager to report to. Plaintiff made it clear that if necessary she would be open to a on campus position absent the requirement of hotel lodging.

80. Considering the internal memos speaking of the hiring spree leading into the fall of 2021, reports in the news stating the substantial need for hiring and for the uptick in both remote and hybrid positions Plaintiff and Plaintiffs mental health provider did not think that it would be difficult to be placed in a position that Plaintiff met the minimum requirements for.

81. At the end of April 2021, Plaintiff requested and was granted a virtual meeting with Delta leader Susan Judson.

82. The purpose of the meeting was to discuss some concerns about Deltas 3rd party EAP provider and that the Plaintiffs own claim of bullying and

workplace mobbing led by Base Director Fred Jones had never been

properly addressed.

83.At the end of the meeting Plaintiff was asked what would you like for

herself. Plaintiff responded with one thing that she wanted was to start

the process of requesting a job accommodation.

84.Judson agreed to a follow-up in a week. Judson instead followed up after

Plaintiff reminder her.

85.Judson, put Plaintiff with an Inflight Director/Manager Sergij Novack.

86.Sergij Novack sent Plaintiff an email followed by a letter sent by mail.

87.The letter outlined that Plaintiff had a series of trainings sessions to

complete prior to her return.

88.Judson and Novak essentially was ignoring Plaintiffs request to discuss a

job accommodation.

89.Plaintiff sent correspondence directly asking for information on the

process for which she did not receive the guidance on.

90.Plaintiff contacted Defendant Sedgwick, Deltas and her Third-Party

Administrator and asked for information on starting the job

accommodation process.

91. Initially in a series of emails Defendant Sedgewick falsely stated that they had no knowledge on the process.

92. When Plaintiff questioned this, Sedgwick conceded and started the job accommodation with Plaintiff.

93. Plaintiff and Plaintiffs mental health provider complied and sent in all the required documentation.

94. Plaintiffs job accommodation was medically approved by Sedgwick on June 28,2021.

95. Plaintiff Delta airlines tried to ask for more paperwork, other than what had just been provided.

96. Plaintiff eventually was granted a start of the process with the first of what would be 3 phone calls for the interactive discussion

97. On the first phone call on August 3,2021, it took place with 4 of Defendants Deltas employees. Including Mr. Novak and HR representative Terrance Jackson.

98. On the first of 3 interactive discussions it was established that the job accommodation was not because the Plaintiff could no longer perform her duties. Plaintiff like anyone could not preform her duties in a hostile work environment.

99. It was discussed and established that per the Plaintiff and the Plaintiffs mental health providers letters, the high level of anxiety from the fear of lodging at the hotels stemmed from knowing that more false accusations that had been previously been sought out by Defendant Delta could lead to her termination.

100.    Plaintiffs anxiety was because she knew that the false complaints being obtained by the Hotel Liaisons could happen again. She had no control over who was willing to supply false complaints.

101.    Plaintiff and Defendant Delta both knew that Deltas scheduling software did not have the capability of preventing someone with her seniority from returning to a Defendants Marriott Hotel in Cleveland Ohio that wanted to ban her.

102.    Plaintiff knew that upon her return, her seniority would not prevent a trip to Lima Peru or any other International or domestic destination where she could be set up with another false complaint provided by a hotel employee willing and seeking to curry favor from Delta Airlines and maintain a contract.

103.    In the second accommodation conversation with Mr. Sergij Novak as a lead for decision making, the discussion ended with Mr. Novack stating

that there are many positions and Special Assignments some that we (the people on the call) were not aware of. He stated that he would expand his search outside of Inflight to see what he could find for me.

104. Prior to this conversation ending and before Mr. Novack's encouraging statement the Plaintiff added that if a position or Special Assignment could not be found she would like to discuss working a schedule of day trips on any days that the company chose for her.

105. With much discussion it was determined that Deltas software was capable of creating a schedule for me with one day trips. This was done for flight attendants on Special Assignments, making Plaintiffs' suggestion also a reasonable request.

106. None of what Plaintiff was requesting would have put Delta Airlines at any undue hardship.

107. Considering the size of Delta Airlines, the well documented need of supporting staff both on campus an off in the late summer/early fall of 2021 what Plaintiff was needing in the form of a job accommodation was a reasonable accommodation under the law.

108.    On the delayed and last interactive discussion for the job accommodation on Sept 14,2021 there was a complete shift led by Mr. Novack.

109.    Plaintiff was told by Novack that there were no positions available in Inflight. He did not state that there were no positions available, he only referenced the one department.

110.    Although the Plaintiffs accommodation had been medically approved and although there had already been 2 seemingly productive conversations the job accommodation participants including Mr. Novack and the Delta job accommodation participants was attempting to abruptly and improperly transition the traditional ADA job accommodation process into a different process, Deltas APA program.

111.    Defendant Novak and the other Defendant Delta employees on the call was ignoring that it had already previously been discussed that the job search would start in Inflight and then if nothing was found the search would extend into other departments. This also was acceptable because flight attendants worked Special Assignments in other departments.

112.    Defendant Novak and the other Defendant Delta employees were attempting to transfer the Plaintiffs accommodation into a Delta program

with a completely different structure and because the employee in this

APA program could not be under any disciplinary action, Plaintiff would

not be eligible. This was a known facts to all of the Defendant Delta

employees taking place in the ADA job accommodation process.

113.    Plaintiff ended the conversation stating that she was not accepting

the transition from the ADA job accommodation process because it had

not been conducted properly.

114.    Plaintiff also stated that she feared that this turnabout was

retaliation for filing an Administrative tort claim against the EEOC filed on

Sept 3,2021.

115.    Plaintiff named 3 posted jobs for which she knew that she met the

minimum requirement for and the next day she put them in writing in an

email to job accommodations and she inquired again about as a last

resort if no positions were to be found why would was her and her

therapist questions not being answered about FMLA eligibility and or a

temporary leave as a job accommodation until a position that fit the

criteria came available.

116.    Plaintiff also inquired in writing as to why her suggestion or offer to

return to work working day trips had been take off of the table.

117.    On September 9,2021 Defendant Sedgwick called Plaintiff and sent a

letter stating that she only had until September 30,2021 to sign off on an

unpaid leave of absence. Please note this was before Plaintiff had been

informed 5 days later that there were no positions for her.

118.    Plaintiff then received a letter from her Long-Term Disability

Sedgewick rep dated Sept 15th 2021 from her stating that she had 30 days

from the date of the letter to apply for a Unpaid Medical Leave of

absence.

119.    Plaintiff questioned Defendant Sedgwick why the deadline of Sept

30th ever was given to her as a deadline to meet.

120.    Plaintiff asked and received a revised letter from Defendant Sedgwick

changing the false information alluding to that she had applied for a leave

and had been denied.

121.    Plaintiff received a second letter giving her the one option of

*applying* for an Unpaid Medical Leave of Absence but then with a

deadline of October 15,2021. Along with this application for a leave that

could be denied, Plaintiff was provided with a new Release of Information

form to fill out.

122.    Plaintiff questioned both Defendant Delta and Defendant Sedgewick
        why was she in a paused job accommodation process be given an
        ultimatum by Delta that unless she signed off on the paperwork she could
        face termination.

123.    Plaintiff questioned both Defendant Delta Airlines and Defendant
        Sedgewick why she and her health provider would need to sign a new
        Release of Information (ROI) when one was just provided when the job
        accommodation had been approved.

124.    Plaintiff sent emails to both Defendant Delta and Defendant
        Sedgwick asking about the legality of presenting with risk of termination a
        ROI that if signed would give Defendants Delta and Defendants Sedgewick
        permission to provide Plaintiffs medical information to unnamed parties.

125.    Plaintiff sent emails to both Defendants Delta and Defendants
        Sedgwick asking about the legality of demanding her to sign off on a ROI
        that asked questions **not** pertaining to her medical diagnosis but
        questions about if there was an HIV or Aids diagnosis and if the signer had
        a dependency on Alcohol or Drugs.

126.    Plaintiff did not receive a response from Delta.

127.    Plaintiff in emails and also in 2 phone conversations continued to ask

Defendant Sedgewick and Defendant Delta why there was no discussion

on her eligibility for an FMLA leave, or for a leave that offered benefits

while waiting for a position to open up for the job accommodation to

which Plaintiff did not receive an answer.

128.    On October 1,2021 Plaintiff's therapist sent an email to Defendant

Sedgwick and Defendant Novack asking why the list of jobs that the

Plaintiff had inquired about wasn't being considered and why Plaintiff's

job accommodation wasn't being met.

129.    While waiting for a response Defendant Sedgwick sent a new

application for the one leave option of Unpaid Medical Leave of Absence

and a new ROI with a new deadline of Oct 18,2021.

130.    On or around Oct 15th,2021, Plaintiff learned from United Healthcare

her medical insurance provider that Defendant Delta had her medical

benefits canceled on October 10,2021 and United Healthcare had been given directions to back date the cancelation to September 30,2021.

131.    Plaintiff called the benefits department and learned that Defendant Delta had canceled her Life Insurance and her travel benefits had also been cancelled.

132.    On October 22,2021 Plaintiff received an email from Defendant Sergij Novak setting up a meeting for Oct 27,2021 to discuss Plaintiffs employment status.

133.    On October 27th 2021 on a phone conversation with Plaintiff Defendant informed Plaintiff that she was being placed on suspension pending a review.

134.    When Plaintiff asked Defendant Novak for specifics, Novak started with because of unprofessional loud behavior with the hotels.

135.    Defendant Novak stated it was because of her behavior on the phone conversation with Sedgewick from **2019.**

136.    Defendant Novak stated that it was because in Plaintiffs meeting on

        March 8,2019 when she was put on a 24-month probation, Plaintiff

        supposedly had pointed finger in or around the face of the manager.

137.    This was a new false allegation from March of 2019 being used in a

        suspension and termination in 2021.

138.    Plaintiff reminded Defendant Novak that the Corrective

        Actions/probations from 2018 and 2019 had included the false allegations

        and was already adjudicated.

139.    Plaintiff also reminded Defendant that in Deltas position statement

        from Feb 3,2020 there was no mention of this false depiction of Plaintiff

        putting her finger in a manager's face on March 8,2019.

140.    Plaintiff asked why her job accommodation was derailed and why she

        had only been given one option for a leave.

141.    Plaintiff was told in the suspension call on October 27,2021 that she

        had refused to apply for one of the leave(s) offered to her. This was said

        knowing that she had only been given the one option of Unpaid Medical

Leave of Absence. And both Delta and Sedgewick had refused to discuss any other leave options and had stopped conversations on the job accommodation. This conversation can be proven.

142. Plaintiff later learned that the Unpaid Medical Leave of Absence that she was being steered to *apply* for changed effective October 1,2021. If she was put on this leave **prior** to October 1, 2021 the leave would not have included any medical benefits.

143. On November 11,2021 Defendant Delta terminated the Plaintiff and when Plaintiff asked for the reason, she was told for the reasons stated in the meeting on October 27th.

144. With a goal to terminate instead of accommodating Delta had skipped a step of Final warning and a 36-month probation.

145. Defendant Deltas failure to provide this accommodation was the factor for Plaintiff losing her job which she had preformed and enjoyed for 10.5 years.

146.     As a direct and proximate result of Defendant(s ) wrongful acts and

omissions, Plaintiff has sustained injuries and damages including, but not

limited to loss of earnings and earnings capacity ;loss of career

opportunities; loss of fringe and pension benefits; mental anguish

,physical and emotional distress; humiliation and embarrassment; loss of

professional reputation; loss of the ordinary pleasures of everyday, loss of

lifestyle that comes from the coveted position of a flight attendant and

loss of everyday life, including the right to pursue the gainful employment

of her choice.

WHEREFORE: Plaintiff respectfully requests that this honorable Court enter

judgment in favor of Plaintiff on her ADA Claim, and award Plaintiff all damages in

excess of $75000 to which she is entitled, including but not limited to damages for

lost wages, future wages, severe emotional distress that she has suffered and will

continue to suffer, and punitive damages as well as any future attorney fees and

cost.

## Count III- Tortious Interference

147.     Plaintiff incorporates paragraphs 1-146

148.    At all relevant times, all Defendant Sedgewick was aware of Plaintiffs

employment with Delta Airlines and Plaintiffs expectancy to be employed

by Delta Airlines.

149.    Sedgwick purposefully and intentionally interfered with Plaintiffs

employment and business expectancy, with an intent to harm and

terminate the relationship between Plaintiff and Delta Airlines.

150.    Plaintiff contends that the Defendant Sedgewick interfered with her

employment relationship by requesting documents that already recently

been provided, and was not legally required and as a result painted

Plaintiff as unwilling to comply and this was used in Plaintiffs termination.

151.    Defendant Sedgwick would not discuss FMLA or any leave options

leaving Plaintiff unprotected when she was terminated.

152.    Defendant Sedgwick put Plaintiff in a position of having to meet an

ultimatum to sign off on a Release of Information that would if signed

potentially could remove any HIPPA rights normally afforded to Plaintiff.

153.    Defendant Sedgwick provided Plaintiff with a document to sign that

would divulge medical information not pertaining to her medical

condition or her request for a job accommodation.

154.    Defendants Marriott and Hilton Corporations employees were made
        aware that Plaintiff was indeed not terminated and was seeking to remain
        employed in her chosen professional role of flight attendant with Delta
        Airlines.

155.    Defendants Marriott and Hilton employees acted intentionally and
        callously and knowingly interfered with Plaintiffs business relationship by
        not following their own policies for addressing a guest concern.

156.    Defendants Marriott and Hilton Corporate and Executive Customer
        Relations representatives employees in their silence and omissions
        interfered with Plaintiffs relationship with her employer Delta Airlines and
        this culminated in Plaintiffs termination as stated by Defendant Novak on
        October 27,2021.

157.    As a direct and proximate result of the all the defendants in this case
        intentionally wrongful and tortious conduct, Plaintiff has suffered
        damages-including but not limited to the monies that she would have
        earned from her continued employment with Delta, but for the illegal and
        highly calculated actions of the Defendant(s), as well as embarrassment,
        shame, and humiliation; and severe emotional distress.

**Wherefore:** Plaintiff respectfully requests that this honorable Court enter judgment in favor of Plaintiff on her Tortious Interference Claim with Defendants Sedgewick, Marriott and Hilton, and award Plaintiff all damages in excess of $75,000 to which she is entitled, including but not limited to damages for lost wages, future wages, severe emotional distress that she has suffered and will continue to suffer, and punitive damages as well as any future attorney fees and cost.

### Count IV-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

158.    Plaintiff Incorporates paragraphs 1-158.

159.    All Defendants conduct listed above on this complaint was extreme and outrageous.

160.    All Defendants listed in this case intended to cause ,or was in reckless disregard for the probability that its conduct would cause, severe emotional distress to not only the Plaintiff but also to her mother (91)for whom **all** parties including the Marriott and Hilton employees were made aware Plaintiff was the primary caretaker for.

161.    The conduct and actions of all Defendants listed in this case did in fact directly and proximately cause severe emotional distress to Plaintiff

,and thereby constituted intentional infliction of emotional distress upon Plaintiff Lola Barron.

162.  The conduct of all Defendants, Delta, Sedgwick, Marriott,and the Hilton was undertaken within the scope of the employment of those acting on its behalf ,and those employee were authorized to engage in that conduct.

163.  Defendant Delta CEO Ed Bastian was kept apprised by the Plaintiff with emails that he never responded to.

164.  **Wherefore:** Plaintiff respectfully requests that this honorable Court enter judgment in favor of Plaintiff on her Intentional Infliction of Emotional Distress claim with Defendants Delta, Sedgewick, Marriott, the Hilton, Mr. Novak and Mr. Ed Bastian and award Plaintiff all damages in excess of $75,000 to which she is entitled, including but not limited to damages for lost wages, future wages, severe emotional distress that she has suffered and will continue to suffer, and punitive damages as well as any future attorney fees and cost.

**JURY TRIAL DEMANDED**

**RESPECTFULLY SUBMITTED,**

By : Lola G. Barron, Pro Se

Lola L. Barron